permanent, and allowing their dismissal only upon a conviction for an offense which involves a violation of police duty. The public welfare requires that all contracts of this character should be condemned as opposed to the policy of the state, and the courts should unhesitatingly refuse to enforce them.

It follows that the judgment appealed from must be affirmed, with costs. All concur.

---

HENNESSEY v. FORTY–SECOND ST., M. & ST. N. AVE. RY. CO.

(Supreme Court, Appellate Term. June 13, 1904.)

1. STREET RAILWAYS—INJURY TO WORKMEN NEAR TRACK—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, working on a street, in putting up a fence along a trench which was being dug, was obliged to be dangerously near a street railway track, to the knowledge of the motorman of the car which struck him, the company is not entitled to an instruction, in an action against it for the injury, that he was required to be vigilant to look for cars and avoid them at the time of their passage.

Freedman, P. J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Richard Hennessey against the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and LEVENTRITT and GREENBAUM, JJ.

Henry A. Robinson, Bayard H. Ames, and F. Angelo Gaynor. for appellant.

Avery, Schlesinger & Paul, for respondent.

GREENBAUM, J. The plaintiff, an employé of a contracting company which was engaged in excavating for the new subway at Long Acre Square, between Forty-Third and Forty-Fourth streets, a trench running parallel with and east of the north-bound track of the defendant, was assisting in the erection of a fence along the northerly side of the trench, a distance of about 30 inches east of said north-bound track. The place where the plaintiff was working was obviously dangerous, as it appeared that the overhang of the defendant's car was about 15 inches, leaving a space between the fence and the outermost edge of the car of about 15 inches. On February 14, 1902, the plaintiff had been thus engaged for about an hour and a half, and, while in the act of driving a nail into a wooden board upon the fence, he was knocked down by the front part of the defendant's car and injured. Plaintiff admitted that he did not see the car which struck him, and that he relied upon the sounding of the gong as a warning of its approach, and that it had been his practice to look for cars from time to time, but that he did not absolutely depend upon his looking, but relied also upon the warnings that he expected would be given him by the motormen. It was testified that, during the time the

plaintiff was working upon the fence, the motormen of the defendant's cars would give warning of their approach by sounding their gongs, and that whenever the plaintiff was thus apprised of an approaching car, or whenever he would notice one coming towards him, he would walk to a bridge which had been built across the trench at a distance of about 30 feet from the place where he was working, and thus get out of the way of the car. The motorman expressly admitted that he was aware that the plaintiff and others were engaged in constructing the fence.

The court, in its instructions to the jury, referring to the rule of contributory negligence applicable to the case, charged as follows:

"He [plaintiff] was also familiar with the fact that cars were almost constantly running along there, as our common experience will teach us. So, therefore, under such circumstances, he was bound to exercise that care, prudence, and diligence which a careful man would exercise, being placed in the position which he was placed in. If he failed to do so, and his failure to exercise the degree of care contributed to the injury in question, in that event your verdict will be for the defendant."

Defendant's counsel asked the court to charge the jury that the plaintiff, working in a place known to be dangerous to him, was required "to keep his senses alert, and to be vigilant to look out for cars and avoid them at the time of their passage." This the court declined to do, and, in place thereof, charged that the plaintiff was bound to exercise that care and diligence that a careful and prudent man would exercise under the conditions he was working. The request was substantially one applicable to the degree of care required of pedestrians crossing railway tracks in a city. It seems to me that the rule of law embodied in the request was altogether too broad, when applied to persons whose duty necessarily required them to work on or so near a railroad track that it would be perilous to remain at the place of work when cars are in the act of passing.

In Smith v. Bailey, 14 App. Div. 283, 43 N. Y. Supp. 856, a street sweeper had not noticed the vehicle that struck him, because his back at that moment was turned toward it, and the court held that:

"If it were necessary in the prosecution of his business that he should be in that position, of course no negligence could be imputed to him. If by reasonable care he could have put himself in a position where he could protect himself from dangers of this description, then he was bound to use this care, having a view to the work which he was engaged in prosecuting. We think, therefore, that this question was one which the jury were called upon to consider, and which they had a right to determine."

Dipaolo v. Third Avenue R. R. Co., 55 App. Div. 566, 67 N. Y. Supp. 421, was also a street sweeper's case, which followed the rule laid down in the Smith Case, supra.

In Bengivenga v. Brooklyn Heights R. R. Co., 48 App. Div. 515, 62 N. Y. Supp. 912, the plaintiff "at the time of the injury was carrying hot asphalt upon a shovel from the side of the track and placing it between the rails of the track," and was struck by one of the defendant's cars under circumstances which ordinarily would have been held, as matter of law, as constituting contributory negligence. The court held that the defendant was chargeable with notice of the

fact that workmen were required to be on the track, both by its contract to repair the street made with the firm by whom plaintiff was employed, and the actual conditions existing; that the person operating the car "was required to exercise extreme care for the protection of the workmen, and that abundance of warning was required"; that the circumstances required that the car should be "under such control that it could be stopped practically upon the instant"; that "whether plaintiff should have observed the car, or not, became a question of fact for the jury"; that the plaintiff "had the right to assume that warning would be given; and that plaintiff might rely upon the presumption that the operator of the car would stop it when it reached the point where he was upon the track." The reasoning in the cases just cited does not rest upon the circumstance in the one case that the person injured was in the employ of the municipality, or in the other that his employer happened to have a contract with the defendant to do the work in which the plaintiff was engaged at the time of the accident; but it has reference to the peculiar conditions under which those engaged in pursuits on the highway at or near railroad tracks are necessarily obliged to perform their work, and to the obvious knowledge of these conditions on the part of those operating the cars upon such tracks. Bearing in mind the reason for limiting in such cases the ordinary rule of contributory negligence applicable to pedestrians, it is easy to distinguish the case of Lyons v. Avis, 5 App. Div. 193, 38 N. Y. Supp. 1104, from the present one. In the Lyons Case the person was injured by a passing truck while mixing mortar upon the highway in front of a building then in course of erection. It there appeared that, although his employer had a permit to place material upon the street, the permit did not necessarily confer authority to utilize the street for mixing mortar. Under such circumstances, it was held that the plaintiff "was nevertheless under protection of the law, and could not be run over with impunity," but as the plaintiff "was utilizing the highway for a purpose foreign to its ordinary use—a purpose which is especially permitted only because of exceptional business needs"—and as it was necessarily "fraught with danger, it called for vigilance corresponding to the exigencies of the situation." Under these circumstances, the court held that the plaintiff could not recover unless he used "diligence in avoiding danger—especially in looking out for teams." It will be observed that there is a wide difference between the Lyons Case and the one under review, in that in the former there are absent the elements that the injured one was necessarily obliged to work at or near a fixed place of peril, such as a railroad track, over which cars were constantly passing, and that the driver was charged with knowledge of the dangerous conditions under which the work was being done, so as to require him to give warning of his approach.

If the defendant was entitled to the instructions requested by it, then it was entitled to a dismissal of the complaint. It was admitted by plaintiff that he did not look for or observe the car that struck him, and, if it was his duty "to be vigilant to look for cars and avoid them at the time of their passage," then there was nothing to submit to the jury.

Nor can it be said, as matter of law, that the plaintiff had sufficient space wherein to remain in safety. The proofs affirmatively show that the situation was a dangerous one, and it does not appear that upon the trial there was any doubt upon this point. If the defendant had any intention of raising an issue of fact as to the sufficiency of this space as a place of safety, then it would, at most, have been entitled to have had that question submitted to the jury, with appropriate instructions as to the law of contributory negligence applicable to a situation which afforded ample space within which to work in safety. O'Connor v. Union Railway Co., 67 App. Div. 99, 101, 73 N. Y. Supp. 606. No such request was made, and as the defendant's motorman admitted that he knew that the plaintiff and others were working near the track, and said that he "came on, ringing his bell"—a fact which was contradicted by the plaintiff and his witnesses—the refusal to charge the jury as requested by defendant's counsel was not error.

The judgment is affirmed, with costs.

LEVENTRITT, J. concurs.

FREEDMAN, P. J. (dissenting). The plaintiff, while in the employ of a contracting company, at the time of the accident was placing a wooden brace upon a fence that ran parallel to, and about 30 inches east from, the north-bound track of defendant's road on Broadway. He worked with his back towards the car track, and while in this position was struck by the side of a north-bound car after a portion of the car had passed him. According to his own testimony, he was familiar with the passing of the cars at the point in question, and knew that he was in a dangerous position, but there is no evidence that he exercised any care to guard against the danger. His testimony does not show that he either looked or listened for the approaching car. In answer to the question, "You did not look at all unless you heard it?" he answered, "No, sir." In answer to the question, "Did you look, or didn't you?" he answered: "I didn't look, because if I looked and I saw it I would not stand there. I relied solely on the motorman giving me warning," etc. He also testified that he did not listen for the car, because he did not hear it coming, that he was the only man that got hurt, and that everybody else got out of the way. There was not, therefore, under all the circumstances, sufficient evidence upon which his freedom from contributory negligence could be found.

But even if it be assumed that the case was one for the jury, there was error in the charge. Defendant's counsel asked the court to charge the jury that, if the plaintiff was working in a place known to be dangerous to him, he was required to keep his senses alert, and to be vigilant to look out for cars and avoid them at the time of their passage. This the court declined to charge, and, in place thereof, charged that the plaintiff was bound to exercise that care and diligence that a careful and prudent man would exercise under the circumstances similar to the ones that he was working under at that moment. As there were facts to support the request, and the point involved in it had not been covered by anything that preceded it, the refusal to charge as requested constituted reversible error, within

the rule laid down in Lyons v. Avis, 5 App. Div. 193, 38 N. Y. Supp. 1104. The cases of Dipaolo v. Third Ave. R. R. Co., 55 App. Div. 566, 67 N. Y. Supp. 421, and Bengivenga v. Brooklyn Heights R. R. Co., 48 App. Div. 515, 62 N. Y. Supp. 912, do not apply. In the first of these cases, it appeared that the plaintiff, as a street sweeper in the employ of the city, had been working in and about defendant's tracks for some two years, and that it had been the custom of the motormen to sound a gong as cars were approaching street sweepers on the track. In the second place, the plaintiff was struck while placing a shovel of hot asphalt between the rails of the track. Under the peculiar circumstances of the case, it was said:

"The defendant was chargeable with notice of the fact, both by its contract to repair the street and its actual condition, that workmen were upon the track at this point, and were required to be in order that the work might proceed. * * * As the prosecution of the work required that the asphalt should be deposited while hot, it is quite evident that the operation of the car was to be had with regard to the plaintiff's being between the rails of the track, and we think that the plaintiff might rely upon the presumption that the operator of the car would stop the same when it reached the point where he was upon the road," etc.

The case at bar is entirely different. Plaintiff's work was not done upon or between the tracks, but 30 inches away from them. He had sufficient space upon which to remain in safety if he straightened himself up. In fact, a part of the car had passed him before he was struck. No custom was established, pursuant to which he might have relied exclusively upon a warning to be given to him by defendant's servants, nor was it made to appear that the particular work upon which he was engaged, and in which in no way concerned the defendant, had progressed for such a length of time that he could claim that the defendant should have taken notice of it, and regulated the running of the car with reference to it, and thus absolved him from the duty of looking out for himself.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.